UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RAYMOND GILBERT ROSS ) | Case No. 04-31735 |
|     Debtor ) | |
| ) | |
| JOCELYN BERGERON ) | |
|     Plaintiff ) | |
| vs. ) | AP No. 04-3283 |
| ) | |
| RAYMOND GILBERT ROSS ) | |
|     Defendant ) | |

**MEMORANDUM**

This matter came before the Court for trial on March 21, 2007, on the Complaint Objecting to Entry of Debtor's Discharge filed by the Plaintiff, Jocelyn Bergeron (the "Plaintiff"). Raymond Ross (the "Defendant"), Defendant's counsel, and Plaintiff's counsel all appeared before the Court. The Court considered the testimony and exhibits presented at trial and enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**FINDINGS OF FACT**

1. The Plaintiff obtained a judgment against the Defendant on February 14, 2003, in the Tenth Judicial Circuit for Hardee County, Florida, in the amount of $66,032.00.

2. On June 19, 2003, the Plaintiff filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Middle District of Florida. The Plaintiff failed to disclose his claims against the Defendant in his bankruptcy schedules.

3. The Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Western District of Kentucky on March 22, 2004. Pursuant to Fed. R. Bank. P. 4004(a), the deadline for complaints objecting to discharge was set at June 22, 2004.

4. On June 16, 2004, the Plaintiff moved for an extension of time to contest the Defendant's discharge and, on July 7, 2004, the Court granted the Plaintiff's motion and extended the deadline to August 23, 2004.

5. On August 23, 2004, the Plaintiff initiated this action against the Defendant seeking to deny his discharge under 11 U.S.C. § 727(a)(2) (concealment of assets), § 727(a)(3) (failure to keep records), § 727(a)(4)(A) (false oath), and § 727(a)(5) (failure to explain loss of assets). At the time the Plaintiff initiated this § 727 action, he lacked standing to pursue this action as the right to pursue the action belonged to the Chapter 7 Trustee in his Florida case.

6. At some point in 2005, the Plaintiff moved to re-open his Florida case for the limited purpose of authorizing the Chapter 7 Trustee to File a Notice of Abandonment of the claims against the Defendant. The Florida Bankruptcy Court granted that motion on May 26, 2005.

7. On July 20, the Florida Chapter 7 Trustee filed a Report and Notice of Abandonment, wherein he proposed to abandon all rights and title to the judgment held by the Plaintiff against the Defendant. Said abandonment would be effective within 15 days, unless an objection was filed. This Notice was sent to the Plaintiff's creditor matrix but not the Defendant, as he was not a creditor of the Plaintiff. No party objected to the abandonment.

8. On September 23, 2005, the Plaintiff filed a Status Report in this action informing this Court of the actions taken with respect to his Florida bankruptcy case.

9. Eventually, after both parties completed discovery, the Court conducted a final pre-trial conference on December 5, 2006, and set the matter for trial on March 21, 2007.

10. On March 20, 2007, the day before the trial, the Defendant filed a motion to dismiss seeking

      dismissal of this action based on the doctrine of judicial estoppel. The Defendant contended that due to the Plaintiff's failure to list this action in his Florida bankruptcy case, he should be judicially estopped from pursuing the action.

11. Immediately preceding the trial, the Court denied the motion to dismiss as being untimely. The Court did, however, offer the parties the opportunity to file post trial briefs on the issue of standing and jurisdiction related to the timing of this adversary proceeding and the status of the Florida bankruptcy case.

12. At the trial, the Plaintiff presented evidence that between December 22, 2000 and March 22, 2004, the Defendant acquired funds in excess of $650,000.

13. The Defendant testified that since 1984, he dealt in real estate and owned and operated a mobile home park, which he later sold.

14. While the Defendant was able to orally explain the disposition of the above-referenced funds, the Defendant testified he kept no financial records which would verify his testimony.

15. The Defendant could not, or would not, produce any financial records tracing his financial history in the years immediately preceding the filing of his bankruptcy case. Thus, no records were produced showing the disposition of the funds mentioned above, including the proceeds from the sale of the mobile home park.

16. The only explanation provided by the Defendant with respect to his failure to keep financial records was that he ran all of his enterprises on an all cash basis and that he simply preferred to not keep financial records.

17. The few bank records submitted by the Defendant only relate to a period of time starting in

2003 and do not adequately explain the source of the Defendant's deposits or the disposition of the monies in question.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

## LEGAL DISCUSSION

The Court will first address the standing / jurisdiction argument. The Defendant contends this Court lacks jurisdiction over this matter as the Plaintiff lacked standing to initiate this action when he filed this complaint objecting to the Defendant's discharge. Because title and ownership of this action belonged to the Plaintiff's bankruptcy estate, only the Florida Chapter 7 trustee possessed standing to initiate this action. The Plaintiff admits that when he filed this action, he lacked standing, but that the abandonment in the Florida bankruptcy case served to retroactively confer standing upon him, thereby correcting the standing problem that existed when he filed this adversary proceeding.

A review if authorities submitted by the parties favors the Plaintiff. As the Tenth Circuit held in Dewsnup v. Timm ( In re Dewsnup), 908 F.2d 588, 590 (10th Cir.1990), aff'd, 502 U.S. 410, 112 S.Ct. 773, 116 L. Ed. 2d 903 (1992), "[p]roperty abandoned under [section 554] ceases to be part of the estate. It reverts to the debtor and stands as if no bankruptcy petition was filed." (citations omitted). Under Mason v. Commissioner of Internal Revenue, 646 F.2d 1309, 1310 (9th Cir.1980), "[w]hen the court grants a trustee's petition to abandon property in a bankruptcy's estate, any title

4

that was vested in the trustee is extinguished, and the title revests to the bankrupt, *nunc pro tunc*." See also Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 617 (7th Cir. 2002) ("when property of the bankrupt is abandoned, the title 'reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.'") quoting Wallace v. Lawrence Warehouse Co., 338 F.2d 392, 394 n. 1 (9th Cir.1964). Thus, while the Plaintiff lacked standing at the time of filing of the complaint, he acquired standing *nunc pro tunc* by the abandonment of the cause of action by the Florida trustee. Rowland v. Mutual Life Ins. Co. of New York, 689 F. Supp. 793 (S.D. Ohio 1988).

In the Defendant's post trial brief, the Defendant argues that the Florida trustee's abandonment of these claims back to the Plaintiff did not revest standing in the Plaintiff and therefore did not revest subject matter jurisdiction in the Court based on principles of judicial estoppel. The Defendant cites no case authority to support this contention and it conflicts with the numerous cases holding otherwise. The Defendant goes on to raise the judicial estoppel argument, the same argument raised and overruled immediately prior to the trial. As the Court held at the trial, while the judicial estoppel argument has merit, it is an equitable doctrine, subject to equitable defenses, such as laches and waiver. In this case, the Defendant waited to long to file his motion to dismiss, only filing it on the eve of trial and at least 18 months after learning of the Florida bankruptcy situation. Nothing in the Defendant's post trial brief persuades this Court to reconsider its previous ruling overruling the motion to dismiss as untimely.

Turning to the merits of the action, § 727(a)(3) provides for a denial of a debtor's discharge when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might

be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).  This section "requires the debtor to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." Turoczy Bonding Co. v. Strbac (In re Strbac), 235 B.R. 880, 882 (6th Cir. BAP 1999) (quoting In re Martin, 141 B.R. 986, 995 (Bankr. N.D. Il. 1992)).  In order to succeed on a § 727(a)(3) action, a plaintiff need not prove fraudulent intent on the part of the debtor.  The law simply provides that the debtor, as a condition precedent to discharge, produce sufficient financial records or give adequate reasons for his failure to do so. In re Gentile, 123 F. Supp. 723, 726 (W.D. Ky. 1954).  The burden on the debtor is greater when, as here, the debtor is a sophisticated person.  A "sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be." McCord v. Sethi (In re Sethi), 250 B.R. 831, 839 (Bankr. E.D. NY 2000).

"The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." Wazeter v. Michigan Nat'l Bank (In re Wazeter), 209 B.R. 222, 227 (W.D. Mich. 1997) (citations omitted); Barclays/Am. Business Credit Inc. v. Adams (In re Adams), 31 F.3d 389, 394 (6th Cir.1994), cert. denied, 513 U.S. 1111, 115 S.Ct. 903, 130 L. Ed. 2d 786 (1995).  However, "[o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor." United States v. Trogdon (In re Trogdon), 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990).

It is clear to the Court that the Defendant is a sophisticated person, having owned and

operated various real estate enterprises in the years immediately preceding the filing of his bankruptcy. As a sophisticated person, he should be able to adequately produce financial documents for the period of time between December 2000 and March 2004, explaining his financial transactions and showing the disposition of large sums of money acquired during that period of time. The Plaintiff, as a creditor of the Defendant, should be able to adequately trace the funds acquired through the Defendant's financial records. The law does not require impeccable bookkeeping or extravagant accounting measures, but it does require at least a fundamental undertaking to maintain proper records. Here, the records are simply inadequate.

Thus, the question turns to whether the Defendant has a sufficient justification for not maintaining his financial records. "[A]ny explanation given by the Debtor to explain any deficiency in his records must be evaluated both for its credibility and reasonableness under the circumstances of this Debtor's affairs and degree of sophistication and for the materiality of any insufficiency." In re Benningfield, 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989). The Defendant provided no justification, other than a stated preference to operate on an all cash basis. The Court finds this excuse patently insufficient. While the Defendant may prefer to operate without financial records, he holds an implied statutory affirmative duty to keep and preserve records. In re Devaul, 318 B.R. 824, 830 (Bankr. N.D. Ohio 2004) (§ 727(a)(3) implicitly casts an affirmative duty on debtors not to destroy and to keep and preserve records). Thus, the explanation provided is not reasonable under these circumstances.

In summary, this Court concludes it has jurisdiction and that the Plaintiff acquired standing *nunc pro tunc* via the abandonment in the Florida bankruptcy case. Furthermore, the evidence

7

presented makes it clear that the Defendant failed to keep recorded information, records or papers from which his financial condition or business transactions might be ascertained and provided no reasonable justification for his failure to keep records. His discharge is, therefore, precluded by Section 727(a)(3).  Because the Court determined that the Defendant's discharge should be denied pursuant to § 727(a)(3), it will not address the other grounds for denial of discharge asserted by the Plaintiff.  <u>In re McCoy</u>, 114 B.R. 489 (Bankr. S.D. Ohio 1990).  The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| RAYMOND GILBERT ROSS | ) | Case No. 04-31735 |
|     Debtor | ) | |
| | ) | |
| JOCELYN BERGERON | ) | |
|     Plaintiff | ) | |
| vs. | ) | AP No. 04-3283 |
| | ) | |
| RAYMOND GILBERT ROSS | ) | |
|     Defendant | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Judgment is rendered in favor of the Plaintiff and against the Defendant.

**IT IS FURTHER ORDERED** that the Defendant be, and hereby is, denied a discharge pursuant to 11 U.S.C. § 727(a)(3).